ALTENBERND, Judge.
Howard Jack Polk appeals the trial court’s order summarily denying his post-conviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. We affirm the order but certify a question to the supreme court at the end of this opinion. We conclude that this court’s decision in Ely v. State, 13 So.3d 167 (Fla. 2d DCA 2009), which requires a hearing on certain claims of misadvice of counsel, does not extend to a claim that a defendant’s lawyer advised him to lie under oath at the plea *805 hearing as to whether the lawyer had made any promises about the length of his sentence.
Mr. Polk has a significant criminal history and has been in prison on several prior occasions. It does not appear, however, that he has ever received a term of imprisonment longer than a few years. He is now almost fifty years old.
He was charged with several new offenses between 2006 and 2008. The three most serious offenses were charges of burglary of an occupied dwelling. He attended a plea hearing before Judge Estrada on August 11, 2008, where he entered an open plea. The transcript of the hearing is in our record and demonstrates that the trial court conducted a thorough discussion of the plea. If there was a written plea agreement, it is not in our record.
At the plea hearing, Mr. Polk’s attorney informed him in open court that he would receive a minimum sentence of fifteen years’ imprisonment because the trial court was sentencing him as a prison re-leasee reoffender. His attorney then advised him the State was requesting that the trial court also sentence him as a habitual offender and that if the sentences ran consecutively, the trial court could sentence him to up to ninety years in prison. Mr. Polk acknowledged on the record that he understood these facts.
When the trial judge took over questioning, the record reflects the following:
THE COURT: Mr. Polk, you’re under oath. At this time your attorney has asked you a series of questions regarding this plea which will be straight up with no agreement to the Court— with no agreement with the Court, do you understand that?
THE DEFENDANT: Yes, Sir.
THE COURT: No one has promised you or told you that you would receive a certain sentence in this matter? In other words somebody didn’t tell you, you know even if you do qualify as PRR, and you understand what that means now, right?
THE DEFENDANT: Yes, Sir.
THE COURT: Or as a habitual offender that Judge Estrada’s only going to give you this much time and he might run it concurrent, did anybody tell you that?
THE DEFENDANT: No, Sir.
THE COURT: So you understand, sir, all what you’re facing in terms of the sentencing enhancements if you’re found to qualify under the PRR statute or under habitual offender, do you understand that?
THE DEFENDANT: Yes, Sir.
THE COURT: And that’s an and/or, do you understand that?
THE DEFENDANT: Yes, Sir.
THE COURT: Has your attorney fully explained to you the ramifications of entering such a plea straight up to the Court?
THE DEFENDANT: He has.
The plea colloquy continued and the trial court discussed each count with Mr. Polk. The trial court then reminded Mr. Polk again that he was testifying under oath and confirmed that no one had promised him anything or threatened him in any way in order to convince him to plead no contest to these offenses. At the end of the hearing, the trial court scheduled a sentencing hearing for a later date so that it could have the benefit of a pretrial sentencing investigation and Mr. Polk could have time to develop arguments against a habitual offender sentence.
The sentencing hearing occurred on October 8, 2008. Another attorney represented Mr. Polk at the sentencing hearing. The transcript indicates that the attorney *806 had limited knowledge of the case prior to the hearing. At the conclusion of the hearing, the trial court imposed three consecutive terms of thirty years, for a total of ninety years. Mr. Polk appealed his judgments and sentences. His attorney filed an Anders brief and this court affirmed in 2009. See Polk v. State, 23 So.3d 119 (Fla. 2d DCA 2009) (table decision).
In his timely motion pursuant to Florida Rule of Criminal Procedure 3.850, Mr. Polk makes eight claims. Only one merits discussion. In his first claim, he maintains that his lawyer promised him that he would definitely receive a sentence of fifteen years, but no more than twenty years’ imprisonment, if he cooperated with the court and entered an open no contest plea. As Mr. Polk states:
In this case, prejudice is attributable to trial counsel and had a direct impact on the overall 90-year sentence obtained. The result of the proceedings were fundamentally unfair and unreliable.
The attorney here, ... assured the Petitioner that he would receive no more than 20 years if he pled open to Judge Estrada, and that he may get (15) years, but nó more than 20. He stated that if he went to trial, he would receive at least 30-years, and possibly 90-years. He stated that he knew how Judge Estrada operated, and that by pleading “straight up”, there was no way he would get more than 20-years.
[The attorney] stated by admitting his guilt, the judge would sentence him to at least 15 years because he had to be based on the reoffender status (PRR) and that the worst case would be 20 years. He further instructed the Petitioner to answer in the negative if asked by the Judge if he had been promised anything, as he would not accept the plea otherwise. He stated the Judge would ask several questions in which he should state he understood. He stated without these questions, the judge would not accept his plea and he would have to go to trial. [The attorney] further assured the Petitioner that no matter what happened, he could appeal the sentence(s).
Mr. Polk further explains that he would not have pleaded in this case and would have gone to trial if he thought he was going to receive a sentence that would never allow for his release during his lifetime.
It is well accepted that misrepresentations by counsel as to the length of a sentence can be grounds to withdraw a guilty plea. See Thompson v. State, 351 So.2d 701, 701 (Fla.1977). In Thompson, the defendant pleaded under a misunderstanding that resulted in a sentence of death. Id. The trial court had not asked any questions at the plea hearing as to whether the defendant had received any promises preceding the plea. Since this rather extreme example, the case law has often struggled to determine what constitutes a misrepresentation and whether the content of a plea colloquy is sufficient to conclusively refute a claim of detrimental reliance on a lawyer’s misrepresentation concerning the sentence that would be imposed on a plea.
In State v. Leroux, 689 So.2d 235 (Fla.1996), the court considered a case in which the defendant negotiated a sentence based on misinformation about gain time credits. At the plea hearing, the trial court asked the defendant a basic question of whether “anyone” had threatened him or promised him “anything.” Id. at 235-36. The court held that this simple inquiry might be evidence against the defendant in this context, but it did not conclusively refute the claim. Id. at 237. The opinion provided extensive guidance for trial courts conduct *807 ing plea colloquies, encouraging judges to ask more questions about gain time and to inform defendants that they cannot rely on anyone’s estimate of credit under the complex system that governed gain time in the early 1990s.
The appellate courts have extensively discussed Leroux in subsequent case law, and plea colloquies have become far more sophisticated over time. The issue of misrepresentation has moved away from questions of estimates about jail credit to other issues. For example, in Scheele v. State, 953 So.2d 782, 783 (Fla. 4th DCA 2007), the Fourth District considered a case in which the defendant claimed his lawyer promised him he would receive a sentence of no more than ten years’ imprisonment. This was not a claim that the lawyer had predicted or given advice on such a sentence, but that the lawyer had affirmatively promised that the sentence would not exceed ten years.
In deciding the case, the Fourth District relied on the defendant’s plea colloquy, which was similar to the plea colloquy in this case, to hold that the transcript of that hearing conclusively refuted the claim. Id. at 785. Relying on the discussion in Le-roux about more specific plea colloquies on the issue of jail credit, the Fourth District determined that comparable questions about the length of the sentence could refute a claim of misadvice. Id. at 784-85.
In Ely v. State, 13 So.3d 167 (Fla. 2d DCA 2009), this court refused to follow Scheele. In that case there was confusion about the scoresheet, and the lawyer assured the client that the worst he could receive under a plea would be a nonprison sanction. Id. at 168. The defendant actually received a five-year term of imprisonment. Id. We explained that a trial court’s question about the possibility of a sentence up to seven years did not necessarily advise the defendant that he could not rely on his attorney’s representations. Id. at 169-70.
Mr. Polk’s motion takes this issue a step farther. Under oath, he claims his attorney promised that his sentence would not exceed twenty years’ imprisonment and advised him that in order to achieve this result, he had to tell the judge he had not been promised anything. In short, he claims his lawyer instructed him to lie during the plea hearing. The issue then becomes whether Mr. Polk is bound by the answers he gave during the plea colloquy in the face of his own sworn allegation that he was instructed to lie during that plea colloquy.
In a perfect world, we could reject this claim on its face because an officer of the court would never advise a client to lie to the judge. Indeed, in this case we have not disclosed the name of the attorney because there is nothing to substantiate Mr. Polk’s claim. But this is not a perfect world. We cannot deny that there may be a rare attorney who does, in fact, assure his or her clients of results at such hearings and further instructs the clients to answer the questions in the proper way to get the desired result.
Under a broad reading of this court’s ruling in Ely, one could conclude that Mr. Polk would be entitled to a hearing on his claim. Under the analysis in Scheele, he would not be entitled to such a hearing. As a practical matter, we are concerned that a broad reading of Ely would make such a claim easy for practically any prisoner who had entered a plea to allege. Such a claim would seemingly require an evidentiary hearing to resolve the facts. We anticipate that the trial court hearing such a case would almost always accept the testimony of the attorney when it conflicts with that of a convicted felon. Even if such a claim is theoretically sufficient on *808 its face, we question whether such a claim is a productive use of scarce judicial resources.
In essence, Mr. Polk’s claim, ironically under oath in his motion, is that he lied under oath at the plea colloquy because his lawyer instructed him to do so. We conclude that a defendant should be estopped to receive an evidentiary hearing on a postconviction claim when the basis of the claim is that he lied under oath at the relevant hearing. See Iacono v. State, 930 So.2d 829, 831-32 (Fla. 4th DCA 2006) (recognizing that defendants “are bound by their sworn answers” during a plea colloquy).
Given the conflict between Ely and Scheele, and our own recognition that our outcome is based more on practicalities than pure logic, we affirm the order on appeal, while certifying the following question of great public importance:
MAY PRISONERS IN POSTCONVTCTION PROCEEDINGS PREVENT THE ANSWERS THEY GAVE UNDER OATH AT PLEA OR SENTENCING HEARINGS FROM CONCLUSIVELY REFUTING THEIR CLAIM BY ALLEGING THAT THEIR ATTORNEY INSTRUCTED THEM TO LIE ABOUT WHETHER THE ATTORNEY MADE ANY PROMISES BEFORE THEY ENTERED THEIR PLEAS?
Affirmed.
NORTHCUTT and VILLANTI, JJ., Concur.