*128
 
 PER CURIAM.
 

 Shawn D. Singfield appeals the summary denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. In 2008, Sing-field admitted to violating community control and was sentenced to sixty months in prison for false imprisonment and to sixty-five months in prison for aggravated battery. We affirm the denial of Singfield’s motion but write to address the allegation raised in ground three, that his trial counsel was ineffective for advising him that he would receive an eighteen-month sentence if he admitted violating condition five of his community control.
 

 In ground three, Singfield alleged that his counsel assured him that because he was familiar with the presiding judge, he would receive only an eighteen-month sentence. Singfield claimed that his counsel advised him that during the colloquy before sentencing, he should answer no when asked if anything had been promised to him and answer yes when asked if he was satisfied with his attorney, which he did. Based on his attorney’s advice and coaching, Singfield allegedly believed that his counsel had worked out an agreement with the court. Had he known that he would instead be sentenced to sixty months in prison, Singfield claimed he would have advised the court that he was promised a lesser sentence, that his admission was not free or voluntary, and that he wished to proceed to a violation of community control hearing.
 

 The following discussion took place during the colloquy:
 

 THE COURT: By pleading guilty to this new charge you are admitting to violating the terms and conditions of your community control, specifically condition five, do you understand that?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: You are giving up your right to have a violation of community control hearing, do you understand that?
 

 THE DEFENDANT: Yes.
 

 THE COURT: Has anyone promised you anything or threatened you in any way in order to get you to do so?
 

 THE DEFENDANT: No, sir.
 

 THE COURT: Do you understand that you do have a 65 month Florida State Prison suspended sentence, do you understand that?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: Do you understand that in all likelihood that is the sentence you are going to receive today, do you understand that?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: Do you still wish to plead guilty and admit to violating your community control?
 

 THE DEFENDANT: Yes, sir.
 

 The court’s singular act of advising Singfield of the maximum sentences faced is insufficient to refute the allegation of misadvice.
 
 See Ely v. State,
 
 13 So.3d 167, 169 (Fla. 2d DCA 2009) (holding that the trial court’s advising defendant of the possible sentence he could receive did not necessarily put him on notice that he could not rely on counsel’s representations about the length of sentence he would receive);
 
 but see Scheele v. State,
 
 953 So.2d 782, 785 (Fla. 4th DCA 2007) (holding that the defendant could not have reasonably relied
 
 *129
 
 on his lawyer’s supposed advice regarding the length of the sentence he faced since the trial judge told him in no uncertain terms of the maximum sentence he faced).
 
 [1]
 
 However, the court’s advice to Singfield was clearly qualified: the court informed him that
 
 in all likelihood,
 
 he would be sentenced to sixty-five months in prison, despite having previously informed him of the maximum sentences. The trial court’s statement placed Singfield on notice that he could not rely on counsel’s statements to the contrary.
 
 Cf. Ely,
 
 13 So.3d at 169.
 

 In
 
 Ely,
 
 the defendant claimed that counsel was ineffective for providing erroneous advice regarding sentencing and that but for counsel’s ineffectiveness, he would not have entered a plea and would have gone to trial. 13 So.3d at 168. In remanding for further consideration, this court reasoned that
 

 [ajlthough the trial court did advise Ely that he could possibly receive a seven-year prison sentence, at the time of such advice, Ely was aware that there was still a scoresheet dispute to be settled, and according to the allegation in his motion, his attorney had advised him that if he scored out to probation, he would receive probation.
 

 Id.
 
 at 169. Under a broad reading of
 
 Ely,
 
 Singfield may have been entitled to an evidentiary hearing. At Ely’s plea hearing, “[t]he trial court acknowledged that there was still a scoresheet issue to be resolved, proceeded with the plea colloquy, and set sentencing for a future date so that a pretrial investigation could be conducted and the scoresheet issue could be resolved.”
 
 Id.
 
 But in the case at hand, the record does not indicate, and Singfield does not allege, that there were additional issues to be resolved by the trial court, which may have given Singfield a reason to continue to rely on counsel’s representations. Once the court advised Singfield of his probable sentence, he had “an affirmative duty to speak up if the attorney ... promised something different.”
 
 Flores v. State,
 
 57 So.3d 218, 220 (Fla. 4th DCA 2010).
 

 Additionally, Singfield’s allegation includes a claim that he lied under oath. “[A] defendant should be estopped to receive an evidentiary hearing on a postcon-viction claim when the basis of the claim is that he lied under oath at the relevant hearing.”
 
 Polk v. State,
 
 56 So.3d 804, 808 (Fla. 2d DCA 2011). But
 
 Polk
 
 recognizes that the court’s outcome is “based more on practicalities than pure logic” and acknowledges the current conflict in the case law.
 
 Id.
 
 (certifying as a question of great public importance: “May prisoners in postconviction proceedings prevent the answers they gave under oath at plea or sentencing hearings from conclusively refuting their claim by alleging that their attorney instructed them to lie about whether the attorney made any promises before they entered their pleas?”).
 

 Based on the facts of this case, the transcript attached to the postconviction court’s order conclusively refutes Sing-field’s allegation of misadvice of counsel. Furthermore, the trial court’s advising Singfield that in all likelihood he would be sentenced to sixty-five months in prison informed him that he could not rely on counsel’s representations to the contrary.
 

 Affirmed.
 

 NORTHCUTT, KELLY, and VILLANTI, JJ., Concur.
 

 [1]
 

 . This court has expressly refused to follow
 
 Scheele. See Ely,
 
 13 So.3d at 167, 168 ("While the postconviction court is correct in its reading of
 
 Scheele,
 
 such is not the law in the Second District.”).